# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3511 | **DATE** | 11/21/2000 |
| **CASE TITLE** | WILTON BUNCH vs. CENTEON, L.L.C., et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held. Enter memorandum opinion and order. Defendants' Rhone-Poulenc Rorer, Inc. and Rhone-Poulenc Rorer Pharmaceuticals, Inc.'s motion for summary judgment is granted as to all counts.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 2 4 2000 | |
| ✓ | Docketing to mail notices. | | date docketed | 95 |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 NOV 22 PM 6: 25 | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| WILTON BUNCH, | ) **DOCKETED** |
| Plaintiff, | ) NOV 2 4 2000 |
| v. | ) |
| CENTEON, L.L.C., et al., | ) No. 99 C 3511 |
| Defendants. | ) Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Wilton Bunch, commenced an action sounding in strict liability and negligence against defendants, Centeon, L.L.C. (Centeon), Rhône-Poulenc Rorer, Inc. (RPR), and Rhône-Poulenc Rorer Pharmaceuticals, Inc. (RPRP) alleging he suffered injuries after he was administered two blood products known as Albuminar and Plasma-Plex. The claim was originally brought in the Circuit Court of Cook County, Illinois, and was removed to this court based on complete diversity. Before this Court is RPR and RPRP's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c).

I. Facts

Centeon is a Delaware limited liability company with its principal place of business in King of Prussia, Pennsylvania. Centeon produces and sells blood derivative products. (Def.'s 56.1(a)(3) Statement ¶ 2). RPR is a Pennsylvania corporation with its principal place of business in Collegeville, Pennsylvania. RPR is a holding company whose subsidiaries and affiliates develop, manufacture, market, and distribute human pharmaceutical products. (Id., ¶ 3). RPRP is a Delaware corporation with its principal place of business in Collegeville, Pennsylvania. RPRP is a wholly

owned subsidiary of RPR and is in the business of research, developing, marketing, and distributing human pharmaceutical products. (Id., ¶ 4).

In February 1995, Armour Pharmaceutical Company (Armour), a subsidiary of RPR, and Behringwerke AG combined their respective plasma derivative businesses and created a worldwide joint venture named Centeon. (Id., ¶ 9). Prior to October 1995, Armour owned and operated a United States production facility in Kankakee, Illinois, that produced pharmaceutical products including Albuminar and Plasma-Plex. (Id., ¶ 9). RPR, RPRP, and Centeon each have their own board of directors and officers; maintain their own minutes and records; and have their own bank accounts, letterhead, and corporate stationery. Centeon does not share offices or officers with RPR or RPRP. (Id., ¶¶ 12, 13). Fifty percent of Centeon's board were RPR executives. (Guy Esnouf's Dep. 22).

In July 1996, plaintiff, a resident of California, was hospitalized at the U.S.C. Hospital in Los Angeles, California, for treatment of esophageal reflux. Between July 2, 1996 and July 26, 1996, plaintiff was given Albuminar and Plasma-Plex. Subsequently, plaintiff brought the present suit alleging injuries from the Albuminar and Plasma-Plex he received in the hospital. (Plaint.'s Complaint ¶¶ 8, 9, 11).

RPR and RPRP argue summary judgment should be granted because they never designed, manufactured, marketed, sold, or distributed the products that allegedly caused plaintiff's injuries.

Plaintiff argues summary judgment is improper because the relationships between RPR, RPRP, and Centeon constituted an actual or apparent agency relationship.

II. Analysis

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence is viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Insurance Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of his claim on which he bears the burden of proof at trial. As such, he must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 2003.

Strict liability applies to manufacturers, sellers, and others in the chain of distribution that place a defective product in the stream of commerce. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 513 N.E.2d 387, 394 (1987). A complaint in negligence must set out facts that establish the existence of a duty owed to the plaintiff by the defendant, a breach of that duty, and an injury proximately caused by that breach. *Kirk*, 513 N.E.2d at 395-96. A duty exists if the defendant and the plaintiff stand in a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Kirk*, 513 N.E.2d at 396. Furthermore, a principal may be held vicariously liable for the wrong-doing of its agent. *Anderson v. Boy Scouts of America, Inc.*, 589 N.E.2d 892, 894 (1992).

"An agent's authority may be either actual or apparent, and actual authority may be expressed or implied." *C.A.M. Affiliates, Inc., v. First American Title Ins. Co. (C.A.M.)*, 715 N.E.2d 778, 783 (Ill. App. Ct. 1999). The words or conduct of the alleged principal, not the words or conduct of the alleged agent, establish the actual or apparent authority of an agent. *C.A.M.*, 715 N.E.2d at 783.

A. Actual Agency[1]

An actual agency relationship exists if the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and if the alleged agent can affect the legal relationships of the principal. See *Anderson*, 589 N.E.2d at 894. However, a parent-subsidiary relationship differs from a principal-agent relationship. See *Pasco Int'l v. Stenograph Corp.*, 637 F.2d 496, 502 (7th Cir. 1980). Theoretically, every parent corporation, by virtue of its ownership interest, has the power, right, and ability to control the products of its subsidiary. *Joiner*, 966 F.Supp. at 1490-491. However, to hold a parent company liable for acts by a subsidiary, the legal separateness of the parent and subsidiary must have been disregarded in a wide range of corporate matters. *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 753 (7th Cir. 1989). Thus, to prevail, plaintiff must satisfy the requirements for piercing the corporate veil. See *Bright v. Roadway Services, Inc.*, 846 F.Supp. 693, 700 (N.D. Ill. 1994); *Joiner*, 966 F.Supp. at 1483. A corporate veil may be pierced when there is "such unity of interest and ownership that the separate personalities of the [corporation] no longer exist"; and the circumstances are "such that adherence would sanction a fraud or promote injustice." *Lumpkin v. Environmental Industries, Inc.*, 933 F.2d 449, 462 (7th Cir. 1991) (emphasis added).

Unity of interest and ownership is shown by the degree of control by the parent corporation by presenting evidence of: (1) misrepresentation; (2) commingling of funds, assets, or identities; (3) undercapitalization; (4) failure to operate at arms length; and (5) failure to comply with corporate formalities. *Lumpkin*, 933 F.2d at 463.

---

[1] "An agent has express authority when the principal explicitly grants the agent the authority to perform a particular act." *C.A.M.*, 715 N.E.2d at 783. The present record clearly demonstrates that Centeon never received the express authority to act as RPR or RPRP's agent.

4

Plaintiff does not address any of these factors directly. By his argument that RPR and RPRP's involvement with Centeon during the recall constituted control by RPR and RPRP, plaintiff indirectly raises factor (4). However, RPR and RPRP's involvement in the recall was to aid a new company during a difficult time and, logically, to also mitigate potential loss. Mr. Esnouf, the Senior Director of External Communications, testified that the purpose of RPR's involvement was to aid Centeon and protect their financial interest in the company. He repeatedly testified RRP did not "control" Centeon. In addition, there is no evidence of any of the remaining four factors. Plaintiff also failed to argue, nor does the evidence support, a finding that adherence of the separate identities would sanction a fraud or promote injustice.

B. <u>Apparent Agency (Holding Out)</u>

Plaintiff also argues that Centeon was the apparent agent of RPR and RPRP. To establish an apparent agency, plaintiff must prove: (1) that the principal held the agent out as having authority or knowingly acquiesced to the agent's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the agent possessed such authority; and (3) the third person relied on the agent's apparent authority to his or her detriment. *Raclaw v. Fay, Conmy & Co.*, 282 Ill. App. 3d 764, 668 N.E.2d 114, 117 (1996). In the context of liability in tort for a defective product, apparent authority is synonymous with "holding out." See *Lill v. Murphy Door Bed Co.*, 290 Ill. App. 328, 8 N.E.2d 714, 719 (1937); *Hebel v. Sherman Equipment*, 92 Ill. 2d 368, 442 N.E.2d 199, 201 (1982); *Root v. JH Industries, Inc.*, 277, Ill. App. 3d 502, 660 N.E.2d 195, 197 (1995). Such liability is generally referred to as the "apparent manufacturer doctrine". *Hebel*, 442 N.E.2d at 201; *Root*, 660 N.E.2d at 197. "The rationale for imposing liability on the apparent manufacturer of a defective product is that it has induced the purchasing public to believe that it is

5

the actual manufacturer, and to act on its belief – that is, to purchase the product in reliance on the apparent manufacturer's reputation and skill in making it." *Hebel*, 442 N.E.2d at 203. Therefore, whether a holding out has occurred must be judged from the viewpoint of the purchasing public. *Joiner v. Ryder System, Inc.*, 966 F.Supp. 1478, 1489 (C.D. Ill. 1996) quoting *Hebel*, 442 N.E.2d at 203.

Plaintiff first argues a Centeon brochure amounted to RPR and RPRP holding themselves out as a manufacturer of the products plaintiff received. Plaintiff quotes sections of the brochure, including: "Armour Pharmaceutical Company, a subsidiary of Rhône-Poulenc Rorer, Armour began producing human plasma...." and "Armour and Behring combine considerable resources to form Centeon" as evidence of holding out. The five-page brochure names Rhône-Poulenc Rorer once. However, it contains numerous references to Centeon and contains Centeon's logo. Reading the brochure clearly indicates that the reference to Rhône-Poulenc Rorer was merely to indicate the two companies that combined to form Centeon. Furthermore, the promotional material and product catalogs clearly bear the name and logo of Centeon. The brochure would not lead a reasonable purchaser to believe that RPR was the actual manufacturer of products sold by Centeon. See *Hebel*, 442 N.E.2d at 203-204; *Root*, 660 N.E.2d at 199.

Plaintiff also argues that RPR's communications to the press and stock analysts concerning a product recall by Centeon evidence holding out by RPR. The stock report cited by plaintiff states that RPR does not expect an earning contribution for its 50% share of Centeon. The stock report cited by plaintiff does not indicate RPR was holding out as the manufacturer; instead, it evinces RPR was issuing a statement about its earnings and expected earnings. Nothing in the statement would lead a reasonable person to believe RPR was the manufacturer of plasma protein. The press release

relied upon by plaintiff also fails to establish RPR held out it was the manufacturer of the products. The press release does not name RPR or RPRP but does name Centeon.

Plaintiff next argues RPR's involvement in the product recall demonstrates holding out. RPR's involvement in the recall included correspondence with the Food and Drug Administration concerning the recall, receipt of comments by RPR employees concerning press releases relating to the recall, auditing of the Centeon facility by a RPR employee, and the directive to purchasers of the recalled products to return the products to RPR's warehouse. In addition, defendants' involvement in the recall occurred after the allegedly defective product was designed, manufactured, and distributed. As such, it evinces damage control as to a defective product and potential losses of income; it does not evince control in the design, manufacturing, or distribution of the product.

Deposition testimony of RPR's employees establish that RPR became involved in the product recall because Centeon was a relatively new company facing a major recall and RPR had experience with such matters. In addition, RPR had a financial interest in Centeon's success. All the facts relied upon by the plaintiff relate to events surrounding the recall of some of Centeon's products, none of which made any representations that RPR or RPRP was the manufacturer of those products. Plaintiff argues that RPR employees were sent to investigate and "approve" the storage for the recalled product. A memorandum by an RPR employee concerning the storage of the recalled product states numerous times that he "reviewed" the storage facilities; the memorandum does not state he was "approving" the storage facilities.

The correspondence by Centeon, RPR, and RPRP to the FDA cannot be relied upon by plaintiff because the correspondences were not disseminated to the purchasing public; therefore, it would not lead a reasonable purchaser to believe that RPR was the actual manufacturer of the

recalled products. See *Joiner*, 966 F. Supp. at 1489. Furthermore, all of the events surrounding the recall could not have led a third party to believe Centeon was RPR's agent and rely on that apparent authority in prescribing, giving, or taking the recalled drug(s) because RPR's involvement in the recall occurred after plaintiff was treated with Centeon's product.

III. Conclusion

Defendants', Rhône-Poulenc Rorer, Inc. and Rhône-Poulenc Rorer Pharmaceuticals, Inc.'s, motion for summary judgment is granted as to all counts.

Dated: 11/21/00

JOHN W. DARRAH
United States District Judge